**Reversed and Remanded and Memorandum Opinion filed August 15, 2024.**



In The

# 𝕱ourteenth 𝕮ourt of 𝕬ppeals

### NO. 14-23-00640-CV

## HOUSE OF POWER ELECTRIC, LC, Appellant

### V.

## BMRJ HEIGHTS LLC, Appellee

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-34108**

## M E M O R A N D U M   O P I N I O N

In this fraudulent-lien case, second-tier subcontractor House of Power Electric, LC, appeals the summary judgment rendered against it and in favor of property owner BMRJ Heights, LLC. Although it is undisputed that House of Power's lien affidavits are unenforceable, genuine issues of material fact preclude summary judgment. Thus, we reverse the judgment and remand the case to the trial court.

## I. BACKGROUND

BMRJ contracted with Gene Giles Design Group, Inc. (Giles) to construct six single-family townhomes at 2511 Ohsfeldt Street in Houston. Giles subcontracted with Paragon Homes, LLC, who subcontracted certain work to House of Power in August and September 2017. According to BMRJ, House of Power performed some of the work incorrectly and ultimately did not complete the project. Paragon told BMRJ that it had contracted with ICON Electric Inc. to perform or correct work that House of Power had been required to perform, and BMRJ paid Paragon for those extra charges.

On January 11, 2018, House of Power's president Albert Chlouber signed lien affidavits for each of the six townhomes in amounts ranging from $3,018.00 to $7.596.20. The six lien affidavits were filed in Harris County's property records the next day. Each affidavit correctly identified BMRJ as the owner of the property but incorrectly identified Paragon as the original contractor. In each affidavit, House of Power attested that it sent a notice of claim to BMRJ on January 11, 2018, via certified mail, return receipt requested. In October 2018, House of Power sued Paragon and BMRJ seeking payment or foreclosure, but soon after, House of Power released the liens and dismissed BMRJ from the case.

BMRJ sued House of Power for filing fraudulent liens and requested an award of statutory damages for each, together with attorney's fees and costs. BMRJ filed a traditional motion for partial summary judgment to establish House of Power's liability on BMRJ's fraudulent-lien claim for statutory damages, reserving the issue of attorney's fees. The trial court initially denied the motion and a first motion for reconsideration, but after a second motion for reconsideration, the trial court granted partial summary judgment awarding BMRJ $60,000 in statutory damages. BMRJ then moved for entry of final judgment including attorney's fees. The trial court

2

granted the motion, awarding BMRJ statutory damages, costs, over $145,000 for attorney's fees in the trial court, and a further $60,000 if BMRJ prevailed in appeals from the judgment.

The trial court denied House of Power's motions for reconsideration and for new trial, and House of Power now appeals the final judgment.

## II. ISSUES

In four issues, House of Power argues that the trial court erred in (a) granting BMRJ summary judgment, (b) awarding BMRJ statutory damages, (c) awarding BMRJ any attorneys' fees, and (d) awarding excessive attorney's fees.

## III. STANDARD OF REVIEW

The movant for traditional summary judgment has the burden to prove that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In determining whether the movant has conclusively established every essential element of its claim or defense as a matter of law, courts consider all of the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We review the ruling on the motion de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Questions of statutory construction are likewise subject to de novo review. *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019).

## IV. GOVERNING LAW

To prevail in its traditional motion for partial summary judgment, BMRJ bore the burden to conclusively prove its allegations that House of Power made,

3

presented, or used a lien affidavit with (1) knowledge that it was a fraudulent lien; (2) intent that it be given legal effect; and (3) intent to cause BMRJ financial injury. *See* TEX. CIV. PRAC. & REM. CODE § 12.002(a); *Gray v. Entis Mech. Servs., L.L.C.*, 343 S.W.3d 527, 530 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A fraudulent lien is one created in bad faith or with dishonesty, a lack of integrity, or moral turpitude. *Nationstar Mortg., LLC v. Barefoot*, 654 S.W.3d 440, 447 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). A person claiming a mechanic's or materialman's lien under Chapter 53 of the Property Code is not liable under the fraudulent-lien provision of Texas Civil Practice and Remedies Code section 12.002 for the making, presentation, or use of a document or other record in connection with the assertion of the claim unless the person acts with intent to defraud. TEX. CIV. PRAC. & REM. CODE § 12.002(c).

House of Power filed six mechanic's and materialman's liens under Chapter 53 of the Property Code. Under the applicable version of the statute, the claimant (here, House of Power) is required to give certain notices to the property owner (BMRJ) and the original contractor (Giles) at different times. Where, as here, a lien claim arises from a debt incurred by a subcontractor (that is, Paragon), the claimant must give written notice of the unpaid balance to the original contractor (Giles) "not later than the 15th day of the second month following each month in which all or part of the claimant's labor was performed or material delivered."[1] The claimant must notify the original contractor and the owner or reputed owner (BMRJ) of the outstanding balance "not later than the 15th day of the third month following each

---

[1] For this prior version of Texas Property Code § 53.056, *see* Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 8, sec. 53.056(a), 1997 TEX. GEN. LAWS 1880, 1882 (amended 2021), and Act of May 28, 1989, 71st Leg., R.S., ch. 1138, § 8, sec. 8, secs. 53.056(b)–(e), 1989 TEX. GEN. LAWS 4693, 4696 (repealed 2021). The 2021 amendments apply only to original contracts entered into on or after January 1, 2022.

month in which all or part of the claimant's labor was performed or material or specially fabricated material was delivered."[2] Finally, the claimant must file the lien affidavit by the 15th day of the fourth month after the indebtedness accrued,[3] sending copies by registered or certified mail to the original contractor and owner within five days.[4]

Because House of Power performed its work in August and September 2017, it was required to give Giles the second-month notices in October and November 2017; to give Giles and BMRJ the third-month notices in November and December 2017; and to file the lien affidavits by January 15, 2018.

Although the lien affidavits were filed before the fourth-month deadline, House of Power did not comply with the second- and third-month notice requirements discussed above. It did not send Giles any notices and did not attempt to send BMRJ a notice until January 11, 2018, well after the time for sending the required notices had expired.[5] Inasmuch as the lien affidavits state when the work was performed and when notices were sent, each of the six lien affidavits appears invalid on its face.

But there is an exception. If House of Power had the status of an original contractor, then the second- and third-month notices described above would not have been required. House of Power would have that status under the Texas Property Code's "sham contracts" provision if BMRJ had contracted directly with Paragon (as would be the case if Paragon had been the original contractor) and the contract

---

[2] *Id.*

[3] *See* prior version of Texas Property Code § 53.052, Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 5, 1997 TEX. GEN. LAWS 1880, 1881 (amended 2021).

[4] *See* prior version of Texas Property Code § 53.055, Act of May 21, 1999, 76th Leg., R.S., ch. 889, § 2, 1999 TEX. GEN. LAWS 3586, 3587 (amended 2021).

[5] According to BMRJ, even that notice was not received.

between BMRJ and Paragon was a sham because one of those two contracting companies could effectively control the other. *See* former version of TEX. PROP. CODE § 53.026.[6]

## V. QUESTIONS OF FACT

In its first issue, House of Power argues that the trial court erred in granting summary judgment because there are genuine issues of material fact as to whether House of Power created the lien affidavits with (a) knowledge that they were fraudulent when created, (b) intent to injure, and (c) intent to defraud. House of Power contends that these are questions of fact that cannot be resolved by summary judgment because they depend on the lien filer's state of mind. *Cf. Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986) (intent to defraud is not usually susceptible to direct proof but must be proven by circumstantial evidence).

Although it is possible to conclusively prove such subjective matters as knowledge and intent so as to succeed in obtaining summary judgment on a fraudulent-lien, one can usually overcome the difficulties in proving knowledge and intent only in the most extreme cases. A few examples illustrate this.

In *Pitre v. Sharp*, the reviewing court affirmed summary judgment on a fraudulent-lien claim in which a former owner filed a warranty deed purporting to convey property he had lost in a tax sale thirty-two years earlier. No. 05-15-00173-CV, 2016 WL 2967826, at *3 (Tex. App.—Dallas May 13, 2016, no pet.) (mem. op.). There could be no basis for the action, for the former owner acknowledged that he had not redeemed the property.[7]

---

[6] *See* Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 4, 1997 TEX. GEN. LAWS 1880, 1881 (amended 2021).

[7] In an analogous case tried without a jury, evidence was held factually sufficient to support a fraudulent-lien judgment where the lien filed in 2013 had been released in 2009. *Roberts v.*

6

In *Bernard v. Bank of America, N.A.*, homeowners failed to make mortgage payments for nearly two years, and on the eve of foreclosure, they unilaterally drafted, signed, and filed a "Substitution of Trustee" document purporting to replace the trustee and to substitute themselves in place of the lender as the beneficiary of the deed of trust. No. 04-12-00088-CV, 2013 WL 441749, at *1, *4 (Tex. App.—San Antonio Feb. 6, 2013, no pet.) (mem. op.). The homeowners then sued to stop the foreclosure on the very grounds they manufactured in the "Substitution of Trustee" document, that is, that the substitute trustee did not authorize the sale and the lender was not the beneficiary of the deed of trust. *Id.* at *1. As the reviewing court pointed out, there was no "supporting legal basis" for the homeowners' actions, and nothing in the record suggested that the homeowners filed the "Substitution of Trustee" document "to legitimately protect their property interests." *Id.* at *4.

In *Brewer v. Green Lizard Holdings, L.L.C. Series SR*, 406 S.W.3d 399, 404 (Tex. App.—Fort Worth 2013, no pet.), Green Lizard bought a property at a tax sale and later discovered that Jack Brewer d/b/a Resolution Trust Co was occupying the property. The day before the sale, Brewer recorded a mechanic's lien, and months later, recorded a deed purportedly signed by a representative of the prior owner a few weeks before the sale. Green Lizard's summary-judgment motion on its fraudulent-lien claim was supported by evidence that the prior owner had not sold the property as represented and knew nothing of the purported deed, or Brewer, or Brewer's company, or the person who allegedly signed the deed on the owner's behalf. *See id.* at 402. In answering the suit, Brewer had "state[d] that he knew the property was abandoned, neglected, and about to be foreclosed on and that he moved in and began making repairs." *Id.* at 404. Although he claimed that he persuaded the

---

*Dixon*, No. 12-15-00181-CV, 2016 WL 900205, at *3 (Tex. App.—Tyler Mar. 9, 2016, no pet.) (mem. op.).

owner to deed him the property (apparently for free), he offered no evidence to controvert Green Lizard's. *See id.* As in *Bernard*, the court pointed out that there was no evidence that Brewer had filed the challenged documents "to protect a legitimate interest in the property." *Id.*

Unlike those cases, the evidence in this case falls far short of conclusive proof. Here, summary-judgment evidence includes the deposition testimony of House of Power's attorney Carl B. Mann, who drafted the lien affidavits and advised House of Power to file them. Mann testified that he did not know about Giles's involvement at that time and believed that Paragon was the original contractor. Even if Mann's belief had been correct, the failure to provide the second-and third-month notices would still render the liens unenforceable—unless the "sham contract" exception applied.

Mann considered there to be an "unresolved question" of whether Paragon and BMRJ "may potentially have been so intertwined as to be subject to the provisions of the sham contracts sections" of the Texas Property Code. If so, then the second-and third-month notices were unnecessary, though he would still have to file the lien affidavits by January 15, 2018.

Although Mann had no evidence that Paragon and BMRJ were interconnected, he testified that, based on his 15 years of experience in property development, "there was certainly a likelihood that they may have been." He explained that, with the deadline to file the lien affidavits rapidly approaching, "we were under the gun" and facing a choice: House of Power could file the affidavits "at the risk that the lien would not be enforceable," or refrain from filing the lien affidavits, and risk "losing the right to the lien altogether, forever, when it may have been enforceable." He discussed the propriety of filing the lien affidavits with Chlouber, who authorized Mann to proceed.

Subsequent actions by House of Power and its counsel are consistent with Mann's testimony. Based on Paragon's alleged failure to pay for House of Power's work, House of Power sued Paragon and BMRJ on October 22, 2018, seeking remedies including payment or foreclosure of the liens. BMRJ's counsel contacted Mann about the case, and Mann responded on November 2, 2018, agreeing that the notice deadline may have been missed, but that the deadline did not apply if BMRJ and Paragon were intertwined. Mann offered to file lien releases and drop BMRJ from the suit if BMRJ would provide a sworn affidavit that BMRJ neither controlled nor was controlled by Paragon and that the parties contracted in good faith. BMRJ supplied the requested affidavit, and as agreed, Mann caused the liens to be released and dismissed BMRJ from the suit.

On this record, and drawing every reasonable inference in favor of House of Power, there are genuine issues of material fact on every element of BMRJ's claim. Reasonable jurors could conclude that the lien affidavits were not fraudulent, or if so, that House of Power did not knowingly file fraudulent lien documents. *See Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 47 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("[T]he fact that Gordon sued West Houston Trees for wrongful foreclosure and made colorable arguments in support of its claims is some evidence that he did not know that his own filings were fraudulent documents, rather than proper filings intended to properly record the valid sale of the property . . . ."). Given that House of Power has never disputed that the liens are unenforceable if second- and third-month notices were required, and considering the quick resolution of the foreclosure claim, reasonable jurors could further conclude that House of Power did not intend for invalid lien affidavits to be treated as valid, but only to preserve any rights the company might already have under the sham-contracts provision. For similar reasons, the evidence does not dictate the conclusion that House of Power

9

filed the affidavits with the intent to cause BMRJ financial harm. *See Brasch v. Lane*, No. 01-09-01093-CV, 2011 WL 2183876, at \*6 (Tex. App.—Houston [1st Dist.] June 2, 2011, no pet.) (mem. op.) (concluding fact issue existed on intent-to-harm element where there was evidence suggesting that defendants filed lis pendens because they believed that their interest was threatened and that they were merely protecting their rights). The additional issue of whether House of Power acted with intent to defraud likewise remains an open question. *See Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 215 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony.").

## VI. CONCLUSION

We sustain House of Power's first issue. Because BMRJ did not establish its right to summary judgment as a matter of law, we reverse the trial court's judgment and remand the case for further proceedings without reaching BMRJ's remaining issues.

/s/ Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Spain and Poissant.